UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| RICKY EARL LAKEY, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:12-CV-97-NAB |
| ) | |
| CAROLYN W. COLVIN[1], ) | |
| Acting Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM AND ORDER

This is an action under Title 42 U.S.C. § 405(g) for judicial review of the Commissioner's final decision denying Ricky Earl Lakey's ("Lakey") application for disability insurance benefits under Title II of the Social Security Act and Supplemental Security Income ("SSI") under Title XVI of the Social Security Act. Lakey alleges disability due to illiteracy, migraine headaches, allergies, and hearing loss. (Tr. 202.) The parties consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c)(1). [Doc. 10.] For the reasons set forth below, the Commissioner's decision will be remanded.

**I.    Procedural History**

On October 22, 2008, Lakey filed applications for disability insurance and SSI benefits. (Tr. 166-173.) The Social Security Administration ("SSA") denied Lakey's claim and he timely filed a request for hearing before an administrative law judge ("ALJ"). (Tr. 80-87, 90.) The SSA granted Lakey's request and the hearing took place on January 4, 2011. (Tr. 29-69.) The

---

[1] At the time this case was filed, Michael J. Astrue was the Commissioner of Social Security. Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013. When a public officer ceases to hold office while an action is pending, the officer's successor is automatically substituted as a party. Fed. R. Civ. P. 25(d). Later proceedings should be in the substituted party's name and the Court may order substitution at any time. *Id.* The Court will order the Clerk of Court to substitute Carolyn W. Colvin for Michael J. Astrue in this matter.

ALJ issued a written decision on January 24, 2011. (Tr. 17-23.) Lakey requested review of the ALJ's decision from the Appeals Council and on May 7, 2012, the Appeals Council denied Lakey's request for review. (Tr. 1-3.) The decision of the ALJ thus stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000). Lakey filed this appeal on June 12, 2012. [Doc. 1.] The Commissioner filed an Answer. [Doc. 11.] Lakey filed a Brief in Support of the Complaint. [Doc. 13.] The Commissioner filed a Brief in Support of the Answer. [Doc. 18.]

## II.     Standard of Review

The Social Security Act defines disability as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1)(A); 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration uses a five-step analysis to determine whether a claimant seeking disability benefits is in fact disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). First, the claimant must not be engaged in substantial gainful activity. 20 C.F.R. §§ 404.1520(a)(4)(i), 416.920(a)(4)(i). Second, the claimant must establish that he or she has an impairment or combination of impairments that significantly limits his or her ability to perform basic work activities. 20 C.F.R. §§ 404.1520(a)(4)(ii), 416.920(a)(4)(ii). Third, the claimant must establish that his or her impairment meets or equals an impairment listed in the appendix to the applicable regulations. 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(iii).

Fourth, the claimant must establish that the impairment prevents him or her from doing past relevant work. 20 C.F.R. §§ 404.1520(a)(4)(iv), 416.920(a)(4)(iv). At step five, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional

capacity to perform a significant number of jobs in the national economy. *Singh v. Apfel,* 222 F.3d 448, 451 (8th Cir. 2000). If the claimant satisfies all of the criteria under the five-step evaluation, the ALJ will find the claimant to be disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

This Court reviews decisions of the ALJ to determine whether the decision is supported by substantial evidence in the record as a whole. 42 U.S.C. § 405(g). Substantial evidence is less than a preponderance, but enough that a reasonable mind would find adequate support for the ALJ's decision. *Smith v. Shalala,* 31 F.3d 715, 717 (8th Cir. 1994). Therefore, even if this Court finds that there is a preponderance of evidence against the weight of the ALJ's decision, the decision must be affirmed if it is supported by substantial evidence. *Clark v. Heckler,* 733 F.2d 65, 68 (8th Cir. 1984). An administrative decision is not subject to reversal simply because some evidence may support the opposite conclusion. *Gwathney v. Chater,* 1043, 1045 (8th Cir. 1997).

To determine whether the ALJ's final decision is supported by substantial evidence, the Court is required to review the administrative record as a whole to consider:

> (1) The findings of credibility made by the ALJ;
>
> (2) The education, background, work history, and age of the claimant;
>
> (3) The medical evidence given by the claimant's treating physician;
>
> (4) The subjective complaints of pain and description of the claimant's physical activity and impairment;
>
> (5) The corroboration by third parties of the claimant's physical impairment;

(6) The testimony of vocational experts based upon prior hypothetical questions which fairly set forth the claimant's physical impairment; and

(7) The testimony of consulting physicians.

*Brand v. Sec'y of Dept. of Health, Educ. & Welfare,* 623 F.2d 523, 527 (8th Cir. 1980).

## III. Decision of the ALJ

The ALJ determined that Lakey met the insured status requirements of the Social Security Act through June 30, 2011, and that Lakey had not performed substantial gainful activity since October 1, 2007, the alleged onset date of disability. (Tr. 22.) The ALJ determined that Lakey suffered from the following impairments: probable borderline intellectual functioning but possible mild mental retardation, and a remote history of headaches, and shortness of breath. (Tr. 22.) However, the ALJ found that Lakey has no impairment or combination of impairments that meets or equals in severity the requirements of any impairments listed in Appendix 1, Subpart P, Regulation No. 4. (Tr. 22.) Further, the ALJ determined that Lakey had the residual functional capacity ("RFC") to perform the physical exertional and nonexertional requirements of medium work with the following limitations: (1) no lifting more than 25 pounds frequently or more than 50 pounds occasionally, and (2) only simple, routine, and repetitive tasks. (Tr. 22.)

The ALJ also determined that Lakey's past relevant work as a forklift operator, janitor, and lumber stacker are within the above-listed limitations and do not prevent Lakey from performing this past relevant work. (Tr. 22.) Finally, the ALJ concluded that Lakey was not disabled as defined in the Social Security Act at any time through the date of the decision. (Tr. 22.)

## IV. Administrative Record

### A. Testimony before ALJ

The ALJ heard testimony from Lakey and vocational expert Matthew Lampley. (Tr. 27-69.) Mr. Lakey was represented by counsel. *Id.*

#### 1. Claimant's Testimony

Lakey testified that he was forty-four years old at the time of the hearing. (Tr. 32.) Lakey testified that he completed tenth grade and was in special education throughout his education. (Tr. 35.) He cannot read and is only able to write his name. (Tr. 36-37.) Lakey's employment history includes working as a forklift driver, cleaning machine operator, and lumber stacker. (Tr. 37, 40-41.) From 1995 to 2002, Lakey stated he worked for Wal-Mart, cleaning bathrooms and running a floor-cleaning machine until he moved to Poplar Bluff, Missouri. (Tr. 40.) From 2004 to 2007, Lakey drove a forklift for a company until he was terminated due to frequent absences. (Tr. 40-41). In 2007, Lakey worked for three months as a wood stacker for WW Wood until he was fired, because he had difficulty accurately counting the boards. (Tr. 37-38.) Lakey testified he has not worked since his termination from the wood stacker job. (Tr. 38.) Lakey stated he has attempted to find other jobs, but he has been unsuccessful. (Tr. 38-39.)

Lakey testified that he had no income and lived with his girlfriend and her daughter. (Tr. 33.) Lakey's girlfriend supported him with food, finances, and transportation. (Tr. 33-34.) Lakey testified that he remains at home during the day, completing household chores such as washing dishes, tidying, laundry, vacuuming, sweeping, mopping, and walking the dog. (Tr. 42-43.) Lakey receives assistance with yard work from a neighbor and his girlfriend. (Tr. 45.) Lackey also carries the groceries while shopping. (Tr. 43.) He spends his free time during the

day talking with his neighbor, watching television, driving ATVs, and occasionally hunting. (Tr. 44-46, 51.) Lackey stated he has a driver's license but rarely drives. (Tr. 33.) Lakey failed the written portion of the driving examination 20-30 times, before his parents arranged an oral examination. (Tr. 57-58.) Lackey testified that he cannot read the street signs, therefore, another person accompanies him when he drives. (Tr. 37.)

Lackey experiences migraine headaches every other day and has allergies. (Tr. 47-49.) Lackey stated he has hearing loss in his right ear, but he does not wear a hearing aid. (Tr. 49-50.) He experiences blackouts, dizziness, and shortness of breath from time to time. (Tr. 50, 59.) Lakey testified that he does not have problems sitting, standing, walking, bending, stooping, crouching, climbing, kneeling, or crawling. (Tr. 53.) Lakey testified that he can probably lift fifty pounds. (Tr. 53.) Lakey also stated that he has not had access to medical treatment, but if he did have access he would go to the doctor and get medicine to control his headaches.

### 2. Vocational Expert Matthew Lampley's Testimony

Vocational Expert ("VE") Lampley testified that a hypothetical claimant of Lakey's age, education, and work experience would be able to perform either Lakey's past work or other work, if that claimant has the ability to perform the exertional demands of medium work; and understand and perform simple, repetitive tasks and instructions. (Tr. 66-67.)

VE Lampley further testified that the claimant could work as a janitor, lumber stacker, and industrial truck operator, as these jobs were all simple and repetitive. (Tr. 67.) There were 7,800 janitor jobs in the regional economy and 543,000 nationally. (Tr. 67.) For lumber stacking, 2,100 regional jobs and 137,000 national jobs were available. (Tr. 67.) For an industrial truck operator, 11,000 regional jobs and 573,000 national jobs were also available. (Tr. 67-68.) VE Lampley also stated that if the claimant missed three or more days of work per

month due to headaches, the claimant would be precluded from the three listed jobs above, as well as all competitive employment. (Tr. 68.)

B.   **Medical Records**

Dr. L.J. Plunkett, Jr., Dr. Shelly Gresham, and Dr. Ellen Howell treated Lakey between September 2005 to January 2006. (Tr. 281-292.) During these visits, Lakey complained of headaches, high blood pressure, and shortness of breath. (Tr. 282-292.) On October 18, 2005, Dr. Shahid Choudhary evaluated Lakey's complaints of headaches. (Tr. 318-319.) Lakey's physical examination was normal. (Tr. 319.) Dr. Choudhary suspected migraine headaches and ordered a CT scan, which showed benign appearing calcifications along the anterior falx. (Tr. 319.)

On December 7, 2005, Lakey had a stress test, which showed myocardial scarring. (Tr. 305.) A pulmonary examination on December 28, 2005 showed apical and basilar ventilation abnormalities. (Tr. 303.) A chest x-ray, also completed on December 28, 2005, was normal. (Tr. 301.) Dr. Dennis Daniels evaluated Lakey regarding his shortness of breath in January and February 2006. (Tr. 296-300.) After visiting Dr. Daniels in January 2006, Lakey underwent several tests. Pulmonary function tests showed mild restrictive lung defect, which were within normal limits. (Tr. 296.) An echocardiogram was normal and a CAT scan showed no abnormalities. (Tr. 296.) Dr. Daniels opined that Lakey had dyspnea on exertion, deconditioning, and possible mild intermittent asthma. (Tr. 297.) Dr. Daniels recommended weight reduction, exercise as tolerated, and the use of albuterol as needed. (Tr. 297.)

On December 5, 2008, Jonathan Rosenboom, Psy. D. evaluated Lakey for an intellectual assessment. (Tr. 252-255.) Dr. Rosenboom assessed Lakey's intellectual functioning using the

7

Wechsler Adult Intelligence Scale- Third Edition ("WAIS-III").[2]  (Tr. 252-255.)  Lakey scored a Verbal I.Q. score of 66, a Performance IQ score of 80 with a FSIQ of 76. (Tr. 254.)  Dr. Rosenboom opined that Lakey's scores indicated a diagnosis of mild mental retardation.  (Tr. 254-255.)  Dr. Rosenboom found that Lakey's scores were consistent with his reported history of educational difficulties including special education programming and his language abilities demonstrated during the interview.  (Tr. 254.)

State agency consultant Joan Singer, Ph.D. completed the mental RFC assessment and Psychiatric Review Technique on January 2, 2009.  (Tr. 260-270.)  Dr. Singer determined Lakey had moderate limitations in his ability to understand, remember, and carry out detailed instructions.  (Tr. 257.)  Dr. Singer indicated that Lakey had moderate limitations regarding activities of daily living; mild difficulty in maintaining social functioning; concentration, persistence, or pace; and no repeated episodes of decompensation.  (Tr. 268.)  Dr. Singer concluded that Lakey does not have a secondary impairment, did not meet the criteria of listings 12.05(C) or 12.05(D), and retains the ability to perform "SRT" (simple repetitive tasks).  (Tr. 259.)

## V.    DISCUSSION

Lakey alleges three errors on appeal.  First, Lakey asserts the ALJ failed to consider the combined effects of all of his impairments when assessing his RFC and failed to state whether he found any of Lakey's impairments severe.  Second, Lakey contends that the ALJ used his "meager" daily activities to discredit him.  Finally, Lakey states that his mental impairment

---

[2] The WAIC–III measures general intellectual functioning.  The Full Scale IQ ("FSIQ") provides a measure of general intelligence.  The Verbal IQ provides a measure of verbal comprehension, including the application of verbal skills and information to the solution of new problems, ability to process verbal information, and the ability to think with words.  The Performance IQ provides a measure of perceptual organization, including the ability to think in visual images and to manipulate these images with fluency and relative speed, to reason without the use of words and to interpret visual material quickly"  *Scott ex rel. Scott v. Astrue*, 529 F.3d 818, 820 n.1 (8th Cir. 2008).

meets Listing 12.05(C) and the ALJ erroneously substituted his opinion for those of his physicians. Lakey requests that this Court reverse the Commissioner's decision and remand this case to the Commissioner to award Plaintiff benefits from the onset date of his disability.

The Court will address the ALJ's decision at step two of the five-step analysis because it is dispositive. Lakey alleges that the ALJ erred at step two of the disability analysis by failing to consider the combined effects of Lakey's mild mental retardation and other alleged impairments, and by failing to identify whether any of Lakey's impairments were "severe." "[T]he ALJ must consider the effects of the combination of both physical and mental impairments to determine whether the combination of impairments is medically equal to any listed impairment." *Raney v. Barnhart,* 396 F.3d 1007, 1011 (8th Cir.2005) (internal citations omitted).

To be considered severe, an impairment must *significantly* limit a claimant's ability to do basic work activities. *See* 20 C.F.R §§ 404.1520(c);416.920(c). "Step two [of the five-step] evaluation states that a claimant is not disabled if his impairments are not 'severe.'" *Kirby v. Astrue*, 500 F.3d 705, 707 (8th Cir. 2007) (citing *Simmons v. Massanari,* 264 F.3d 751, 754; 20 C.F.R. § 416.920(a)(4)). "An impairment is not severe if it amounts only to a slight abnormality that would not significantly limit the claimant's physical or mental ability to do basic work activities." *Id.* at 707. "If the impairment would have no more than a minimal effect on the claimant's ability to work, then it does not satisfy the requirement of step two." *Id.* (citing *Page v. Astrue,* 484 F.3d at 1043). "It is the claimant's burden to establish that his impairment or combination of impairments are severe. *Id.* (citing *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000)). "Severity is not an onerous requirement for the claimant to meet, . . . but it is also not a toothless standard." *Id.* at 708.

In this case, the ALJ did not identify what, if any, impairments he found to be severe. The ALJ's opinion states the following:

> The medical evidence establishes that the claimant has probable borderline intellectual functioning but possible mental retardation, and a remote history of headaches and shortness of breath, but no impairment or combination of impairments that meets or medically equals in severity the requirements of any impairment listed in Appendix 1, Subpart P, Regulations No. 4.

(Tr. 22.) Further, the ALJ states "all of claimant's testimony about physical impairments is either not credible at all, or barely credible." (Tr. 20.) The ALJ also states, "Dr. Rosenboom did diagnose mild mental retardation, probably based on the verbal IQ of 66 that the claimant obtained on the test that date. However, the undersigned is very skeptical of the claimant being mentally retarded." (Tr. 21.)

If a claimant does not have any impairment or combination of impairments which significantly limits his physical or mental ability to do basic work activities, the Commissioner is required to find that the claimant does not have a severe impairment and is, therefore, not disabled. 20 C.F.R. §§ 404.1520(c), 416.920(c). In this case, the ALJ states that Lakey has impairments, but then the ALJ also states that he does not find that any of Lakey's allegations regarding the impairments credible. The ALJ completed the five-step analysis, which would indicate the ALJ found that Lakey had severe impairments. But, the severe impairments are not identified. It is incumbent upon the ALJ to identify the impairment or impairments believed to be severe to enable the Court to determine the presence of substantial evidence *vel non* as to whether such impairment(s) are disabling." *Dale v. Apfel*, 45 F.Supp.2d 674, 680 (E.D. Mo. Mar. 11, 1999).

The Commissioner states that the ALJ could have more clearly articulated, which of any, impairments were severe, but it was a deficiency in opinion writing that does not require reversal. The Court disagrees. If the ALJ does not find that the claimant has severe impairments, a low standard, the analysis ends at step two. If the claimant has severe impairments, it is clearly required that those be identified by the ALJ so the court can determine whether the ALJ made a proper analysis at steps three, four, and five. It would not be appropriate for the Court to speculate regarding which impairments the ALJ found to be severe, especially in this case where the ALJ questions whether any impairments exist, but then completes the five step analysis indicating claimant had a severe impairment.

Accordingly,

**IT IS HEREBY ORDERED** that the relief which Plaintiff seeks in his Complaint is **GRANTED in part** and **DENIED in part**. [Doc. 1, 13.]

**IT IS FURTHER ORDERED** that this case is remanded and the ALJ is required to identify what, if any, severe impairments exist and complete the five-step analysis in accordance with the social security law and regulations.

**IT IS FURTHER ORDERED** that a separate Judgment will be entered in favor of Plaintiff.

Dated this 29th day of October, 2013.

    /s/ Nannette A. Baker
NANNETTE A. BAKER
UNITED STATES MAGISTRATE JUDGE